*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 13, 2026
2:35 PM

Plaintiff-Appellee,

v

No. 371525
Ingham Circuit Court
LC No. 29-000126-FC

BRANQUELL SAYMAN-ANTHONY BATES,

Defendant-Appellant.

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (use of force or coercion causing personal injury). Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to consecutive prison terms of 262 to 480 months (21¾ to 40 years) for each count. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

Defendant and M M-H met in 2017 and frequently socialized with a mutual group of friends. On August 29, 2018, defendant forced himself on M M-H. M M-H struggled to get away from defendant. She told him no and repeatedly demanded that he stop. Defendant slapped, bit, and choked M M-H during the struggle. He threatened to punch her if she continued to fight. Defendant pinned M M-H's legs up by her arms and put his mouth and tongue on her vagina. M M-H struggled against defendant and repeatedly told him to stop. He eventually did. But as M M-H was lying with her back facing defendant and crying, defendant violated her further by inserting his penis into her vagina. Once again, M M-H told defendant to stop multiple times. After several minutes, he finally stopped.

Several days later, M M-H reported the assault to the police. Following an investigation, defendant was charged with two counts of CSC-I. Defendant testified on his own behalf at trial. He maintained that he and M M-H engaged in consensual intercourse, but M M-H expressed regret after the fact because she was worried how it would affect their group of friends. Defendant denied

slapping, biting, or strangling M M-H. Defendant was convicted and sentenced as described above. Defendant now appeals.

## II. SPEEDY TRIAL

Defendant argues that his constitutional right to a speedy trial was violated, and he was prejudiced by the five-year delay from the time of his arrest to the time that trial began. We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion to dismiss. *People v Witkoski*, 341 Mich App 54, 59; 988 NW2d 790 (2022). "Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law." *People v Jones*, __ Mich App __, __; __ NW2d __ (2024) (Docket No. 365590); slip op at 3 (cleaned up). Constitutional questions are reviewed de novo and the trial court's attributions of delay are reviewed for clear error. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (cleaned up).

In *Jones*, this Court explained a criminal defendant's right to a speedy trial:

> Both the United States and Michigan Constitutions guarantee the right in criminal prosecutions to a "speedy" trial. US Const, Am VI; Const 1963, art 1, § 20. "Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice." MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id*. "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. [*Jones*, __ Mich App at __; slip op at 3.]

"These factors are often known as the *Barker* factors, as they were first announced by the United States Supreme Court in *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972)." *People v Smith*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 362114); slip op at 3 n 1.

At the outset, we note that defendant's arguments conflate the 180-day rule outlined in MCL 780.131(1) and defendant's constitutional right to a speedy trial. "The 180-day rule is distinct from a criminal defendant's constitutional right to a speedy trial under our federal and state Constitutions, US Const, Am VI; Const 1963, art 1, § 20[.]" *People v Witkoski*, 341 Mich App at 60. Because defendant's statement of questions presented only addresses his speedy-trial right, any issue regarding the 180-day rule is waived. See *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011) (stating that an issue not contained in the statement of questions presented is waived on appeal); see also MCR 7.212(C)(5) (stating that an appellant's brief must contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal.").

## A. LENGTH OF DELAY

The first *Barker* factor is undisputed. Defendant was arrested in December 2018 and arraigned in January 2019. Trial commenced nearly five years later in August 2023. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. "Under the *Barker* test, a 'presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id.* (cleaned up).

## B. REASON FOR DELAY

The second *Barker* factor is the reason for delay. "[C]ourts may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution." *People v Lown*, 488 Mich 242, 261-262; 794 NW2d 9 (2011) (cleaned up). "Although delays inherent in the court system . . . are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Smith*, __ Mich App at __; slip op at 3 (cleaned up).

Defendant acknowledges that there is no evidence of bad faith but argues that all of the pretrial delays should be attributable to the prosecution because he did not "agree to, cause or request, a single delay" and delays inherent in the court system are "technically attributable to the prosecution." Defendant claims that the pretrial and trial dates scheduled between May 6, 2019, and April 8, 2021 "all were adjourned without consent or stipulation from the defense." The record does not support defendant's argument.

On December 27, 2018, the criminal complaint was authorized, and a warrant was issued. Defendant was arraigned on the CSC charges in the district court on January 2, 2019. Following a preliminary examination, defendant was bound over to the circuit court on all counts. A jury trial was scheduled for May 6, 2019.

On the same date that the CSC warrant was issued, defendant was arrested in a separate case arising out of a December 25, 2018 incident. He was charged with carrying a concealed weapon (CCW) in a vehicle occupied by defendant, MCL 750.227(2), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b (collectively, the weapons charges). Following a preliminary examination, he was bound over to the circuit court on the weapons charges.

On April 9, 2019, a combined pretrial conference was held on the CSC and the weapons charges. A plea offer was made. Defendant requested a jury trial. The prosecutor informed the trial court that additional charges had been authorized for the December 25, 2018 incident: assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, assault with intent to murder (AWIM), MCL 750.83, discharging a weapon from a vehicle, MCL 750.234a(1)(a), and two counts of felony-firearm (collectively, the assault charges). In light of the

additional pending charges, the trial court reset the pretrial to May 14, 2019, for all three felony matters, and adjourned the May 6, 2019 jury trial.

From the time of defendant's arrest on December 28, 2018, through the first pretrial conference on April 9, 2019, the record reflects normal pretrial proceedings with trial scheduled for May 6, 2019. This 3½-month period should be attributed to the prosecution, but with a neutral tint and minimal weight because there is no evidence that the prosecution deliberately delayed the proceedings. *Smith*, __ Mich App at __; slip op at 3.

The parties attended several final pretrial conferences between May 14, 2019, and March 4, 2020, as defense counsel worked to "package up" a plea deal for the charges in all three felony cases. The trial court made it clear that it would not accept any pleas to reduced charges or participate in any sentencing bargaining after the final pretrial conference. At the March 4, 2020 final pretrial conference, the parties informed the trial court that they were ready to proceed to trial, which was scheduled for April 27, 2020.

The nearly 11-month delay in the pretrial proceedings from April 9, 2019, through March 4, 2020, is attributable to defendant. Defendant's December 25, 2018 conduct resulted in his arrest on December 27, 2018. After additional charges were authorized in April 2019, defendant agreed to several adjournments of the final pretrial conference so that he could attempt to work out a plea deal. The record also reflects that defendant was not prepared to go to trial sooner because he requested additional funds to hire a private investigator.

Shortly after the March 4, 2020 final pretrial conference, the COVID-19 pandemic began. In March 2020, the Governor declared a state of emergency because of the onset of the pandemic. In response, our Supreme Court issued Administrative Order No. 2020-1, effective March 15, 2020, and adopted emergency procedures in the state's court facilities. See 505 Mich xcix. Effective March 18, 2020, our Supreme Court imposed limits on trial court proceedings, limiting access to courtrooms to no more than 10 persons. Administrative Order No. 2020-2, 505 Mich cii. Beginning April 23, 2020, just four days before the trial was scheduled in this case, the Supreme Court delayed all jury trials until June 22, 2020, or until further order of the Court. See Administrative Order No. 2020-10, 505 Mich cxxxix.

In response to the COVID-19 pandemic, the trial in this case was adjourned several times. Remarkably, defendant fails to mention the COVID-19 pandemic or its impact on court proceedings as a reason for delay. When jury trials resumed, one of the first trials to be held was the consolidated matter regarding defendant's weapons and assault charges, which began on August 20, 2020.[1] Because defendant's CSC charges were not related to the December 2018

---

[1] On August 24, 2020, a jury found defendant guilty of AWIGBH, CCW in a vehicle occupied by defendant, felon-in-possession, two counts of felony-firearm. On September 30, 2020, defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 5 to 15 years' imprisonment for his AWIGBH conviction, 24 to 90 months' imprisonment for his CCW conviction, 24 to 90 months' imprisonment for his felon-in-possession conviction, and two years' imprisonment for each felony-firearm conviction. *People v Bates*, unpublished per curiam opinion of the Court of Appeals, issued August 25, 2022 (Docket Nos. 355125 and 355126), p 1.

matter, this case was not consolidated for trial with those other two felony matters. A rise in COVID-19 infections prompted the Ingham Circuit Court to suspend in-person jury trials effective October 1, 2020, which was extended multiple times because of continuing pandemic conditions. The Ingham Circuit Court returned to full capacity on June 25, 2021. When Ingham Circuit Court resumed in-person jury trials in June 2021, it was faced with a large backlog of cases. A visiting judge was hired to help clear the backlog. This case was scheduled as a backup trial before the visiting judge in October 2021 but was subsequently adjourned and rescheduled for March 29, 2022. From January through April 2022, the Ingham Circuit Court suspended jury trials once again because of an increase in COVID infections and hospitalizations.

"The COVID-19 pandemic placed immeasurable, unexpected, and unprecedented stress on our court system. That stress included the suspension of jury trials, the resulting backlog of cases, and the inevitable delays in taking cases to trial." *Smith*, __ Mich App at __; slip op at 1. The 24½-month delay from March 2020 through April 2022 is attributable to the COVID-19 pandemic, not to the prosecution. See *id.* at __; slip op at 1 ("[D]elays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim.").

The proceedings were further delayed by defendant's transfer to Alabama in January 2021 to resolve forgery charges from 2019. While defendant was serving time at the Michigan Department of Corrections (MDOC) for his August 2020 convictions on the weapons and assault charges, he invoked his Interstate Agreement on Detainers (IAD) rights[2] and demanded a speedy trial on his Alabama charges.[3] Defendant was transferred to Alabama to resolve his pending charges. Defendant eventually reached a plea deal in the Alabama matter and was sentenced. But on the same date that he was sentenced, he got into an altercation with a detention deputy, which resulted in misdemeanor assault charges. Defendant pleaded guilty to the misdemeanor assault charges, was sentenced, received credit for time served, and was released from Alabama's custody.

The MDOC was not notified that defendant had been released. Because defendant had not completed his sentence on the assault and weapons' convictions in Michigan, an administrative warrant was issued for his return. Defendant was arrested in Detroit on January 6, 2023. The nine-month delay from the end of the COVID-19 pause in April 2022 through defendant's January 2023 arrest in Detroit is attributable to defendant because once Alabama accepted temporary custody of defendant under the IAD, this case could not proceed to trial until the Alabama matter was concluded. See *People v Patton,* 285 Mich App 229, 232; 775 NW2d 610 (2009) ("Once a detainer

---

[2] An IAD pertains to an "untried indictment, information or complaint" that is pending in one state against a person serving "a term of imprisonment" in another state. MCL 780.601, art III(a), art IV(a). " 'Forty-eight States, [including Michigan,] the Federal Government, and the District of Columbia . . . have entered into the Interstate Agreement on Detainers . . . .' " *People v Swafford*, 483 Mich 1, 8; 762 NW2d 902 (2009), quoting *Alabama v Bozeman*, 533 US 146, 148; 121 S Ct 2079; 150 L Ed 2d 188 (2001).

[3] Pertinent documents related to defendant's charges in Alabama were attached to appellee's motion to expand the record. This Court granted appellee's motion. *People v Bates*, unpublished order of the Court of Appeals entered May 14, 2025 (Docket No. 371525).

is filed, it is then that the IAD is triggered and compliance with the provisions of the agreement is required.") (cleaned up).

The record reflects that the prosecution was ready to proceed to trial and did not take any action to delay the August 16, 2023 trial date. Therefore, the 7½-month delay from the time of defendant's January 2023 arrest in Detroit to the time of trial is given a neutral tint and only minimal weight.

Examining each period of the 55½-month delay, 20 months are attributable to defendant, 24½ months are attributable to the COVID-19 pandemic, and 11 months are neutral and thus assigned minimal weight. When considered together, there is no evidence that the prosecution is substantially to blame for the delays in this case.

## C. ASSERTION OF RIGHT

The third *Barker* factor is defendant's assertion of the right to a speedy trial. In June 2021, defendant moved for dismissal alleging speedy-trial and 180-day violations. The trial court acknowledged that the 180-day deadline had passed but denied the motion because jury trials were on hold during the COVID-19 pandemic and the matter was scheduled for trial.

On July 7, 2023, defendant again moved for dismissal alleging speedy-trial and 180-day violations. The trial court found that most of the adjournments were during the COVID-19 pandemic and there were further delays because of defendant's transfer to and conviction in Alabama. Defendant's motion was denied.

This factor weighs in favor of defendant.

## D. PREJUDICE

The final factor is the prejudice to defendant caused by the delay. " 'There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense.' " *Smith*, ___ Mich App at ___; slip op at 6, quoting *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). "Pretrial incarceration necessarily results in a degree of prejudice to the person." *Smith*, ___ Mich App at ___; slip op at 6 (cleaned up). "[W]hile anxiety caused by a lengthy delay can occur, anxiety alone cannot establish a speedy-trial violation." *Id*. at ___; slip op at 6. But "impairment of defense is the most serious form of prejudice in the context of a speedy-trial claim because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. at ___; slip op at 6 (cleaned up).

Because the delay between defendant's arrest and trial was more than 18 months, prejudice is presumed. *Williams*, 475 Mich at 262. Defendant broadly claims that his pretrial incarceration caused "stress, loss of contact with family and friends, loss of work and income opportunities, and the clear limitations on every-day life that accompany incarceration."[4] But he has not identified

---

[4] Defendant also claims that he was personally prejudiced because a parole detainer precluded credit for all of the time that he was incarcerated. Defendant received 643 days' credit for time

any prejudice to his defense. In fact, defendant admits that "[h]e cannot show that witnesses were not available to him due to the delay, or that any necessary documentation was lost in the intervening time period."

Although there was a 55½-month delay, there is no evidence that the prosecution is substantially to blame for the delays in this case. The prosecution also overcame the presumption of prejudice by showing that defendant's defense was not hindered by the delay. Balancing all the relevant factors, defendant has not established a violation of his right to a speedy trial.

III. SUFFICIENCY OF THE EVIDENCE

Next, defendant asserts that there was insufficient evidence to prove beyond a reasonable doubt that M M-H suffered a personal injury to establish that defendant was guilty of CSC-I. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant was convicted of two counts of CSC-I under MCL 750.520b(1)(f). "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" and "causes personal injury to the victim and force or coercion is used to

---

served between the time of his arrest on December 28, 2018, and the date he was sentenced for the weapons and assault convictions. The parties have stipulated that defendant receive an extra 96 days' credit for the time between his arrest in Alabama on September 21, 2018, and his return to Michigan on December 28, 2018.

-7-

accomplish sexual penetration." MCL 750.520b(1)(f). Defendant does not challenge that there was sufficient evidence of penetration accomplished by force or coercion but argues that there was insufficient evident to prove beyond a reasonable doubt that M M-H suffered personal injury. We disagree.

"[P]ersonal injury," as used in MCL 750.520b(1)(f), means "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). In this case, the prosecutor asked the jury to find that the complainant suffered bodily injury or mental anguish. Mental anguish consists of "extreme or excruciating pain, distress, or suffering of the mind." *People v Petrella*, 424 Mich 221, 259; 380 NW2d 11 (1985). Bodily injury and mental anguish are different aspects of the single element of personal injury and only one needs to be proven. *People v Asevedo*, 217 Mich App 393, 397; 551 NW2d 478 (1996).

Determinations as to whether mental anguish has been proved beyond a reasonable doubt must be made on a case-by-case basis. *Petrella*, 424 Mich at 259, 270. Factors that may be considered include:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
>
> (2) The need by the victim for psychiatric or psychological care or treatment.
>
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
>
> (4) Fear for the victim's life or safety, or that of those near to her.
>
> (5) Feelings of anger and humiliation by the victim.
>
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
>
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
>
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
>
> (9) The fact that the assailant was the victim's natural father. [*Id*. at 270-271.]

No single one of these factors is necessary to a finding of mental anguish. *Id*. at 270.

M M-H testified that she cried during the assault. She stated that she felt as if she lost everything because of the incident. She explained, "I felt like I was failing and like I was going to be unsuccessful in life because I wasn't going to be able to finish school. I didn't feel safe on the campus or in my apartment anymore." She stopped showing up for work, which caused her to be

-8-

fired. Because she lost her income, she was unable to pay her rent, which led to her eviction. She also withdrew from school.

M M-H also testified that her mental health has been impacted by the incident. She fears being alone in heavily-populated public places, has frequent nightmares, and difficulty sleeping. She has been attending therapy and was diagnosed with posttraumatic stress disorder (PTSD) from this incident.[5] She was prescribed medication to help her sleep. She also experiences anxiety and panic attacks and was prescribed medication to help. She maintained that the legal process has been difficult because she is forced to relive the trauma, talk about it, and recall details even though she would like to forget the incident. She also felt as if she was being blamed for the incident. M M-H described how the incident has affected her life experience:

> It's changed the way that I do a lot of things, especially in regards to safety in social settings and some settings where I'm not necessarily surrounded by a lot of people. It's affected my ability to have close relationships, friendships with people from the opposite sex. For a little while after the assault, I didn't have sex with a male for a few years actually as a result of this assault, so it's just changed the way that I view things, and I'm not that carefree little girl that I used to be with the big open heart who's very accepting of people. I have to kind of keep a wall up so that I can protect myself better.

Witness testimony also established how the incident had impacted M M-H. She was visibly sad and grim in her own apartment, had difficulty sleeping, cried, had breakdowns, called off of work, and stopped attending class. Although no one single factor outlined in *Petrella* is necessary to find mental anguish, 424 Mich at 270, the evidence in this case supported multiple factors. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that M M-H experienced mental anguish. Because the evidence of M M-H's mental anguish was sufficient to establish the personal injury requirement, we do not need to reach the merits of defendant's argument regarding the evidence of bodily injury. See *Petrella*, 424 Mich at 272 n 23.

IV. OFFICER'S TESTIMONY REGARDING PRIOR CONTACT WITH DEFENDANT

Defendant further argues that he is entitled to a new trial because the prosecutor elicited testimony from the investigating officer that he had a prior contact with defendant. Alternatively, defendant asserts that his trial counsel was ineffective by failing to object to the inadmissible testimony, move for a mistrial, or request a cautionary instruction. We disagree.

"Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Because defendant did not object and request a curative instruction at trial, this Court's review is for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, a

---

[5] In July 2019, M M-H enrolled in the military. But she was medically retired after her PTSD diagnosis.

defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"A prosecutor 'is the representative . . . of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *People v Evans*, 335 Mich App 76, 89; 966 NW2d 402 (2020), quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). We review prosecutorial misconduct issues on a case-by-case basis by reviewing "the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (cleaned up). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. (cleaned up). We will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant argues that he was denied a fair trial because the prosecutor elicited testimony from the responding police officer that he had previous contact with defendant:

> *Q*. And so was the victim at the time able to tell you a full name and date of birth of the person who just sexually assaulted her?

> *A*. No.

> *Q*. Okay. Can you describe what she was able to tell you about the person that actually assaulted her?

> *A*. She was able to tell me the name she knew him by, the street name and where another girlfriend lived and what vehicle he drove and the girlfriend drove.

> *Q*. Okay. And was that street name something familiar to you or no?

> *A*. The street name was not.

> *Q*. Okay. Were you able to take from that information that she shared with, the victim shared with you and put together a possibility for a suspect?

> *A*. Yes, I was.

> *Q*. Tell me how you confirm that, what you did physically as an officer.

> *A*. I remembered a prior meeting and I cross referenced that past report to verify the information that I had.

*Q*. Okay. So you had previously had some kind of contact with Mr. Bates?

*A*. Yes.

*Q*. Okay. And after ascertaining name and date of birth, how did you confirm with the victim that is, in fact, we're talking about the same person?

*A*. The victim showed me a picture and I immediately recognized him.

*Q*. Okay. And do you see him in the courtroom today?

*A*. Yes.

*Q*. Could you point to him and just describe a piece of clothing for the record?

*A*. That's the gentleman right there in the blue suit.

[The Prosecutor]: Okay. Let the record reflect that the officer has identified the Defendant Mr. Bates.

The Court: Without objection, sir?

[Defense Counsel]: No objection, Your Honor.

Defendant contends that this testimony disclosed to the jury that defendant had an unrelated criminal history. We disagree. The testimony was not elicited to establish that defendant had a prior criminal history. The prosecutor properly established a foundation for the officer's identification of defendant as the person that M M-H alleged sexually assaulted her. Further, defendant later explained that his prior meetings with the officer were for noise complaints for loud music. Therefore, there was no basis for the jury to infer that defendant had a prior criminal history. The record does not support defendant's claim of prosecutorial misconduct, and therefore there is no plain error.

Alternatively, defendant asserts that his trial counsel was ineffective by failing to object to the inadmissible testimony, move for a mistrial, or request a cautionary instruction. An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Constitutional questions are reviewed de novo and the trial court's findings of fact, if any, are reviewed for clear error. *Id*. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[6] evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or move in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because defendant did none of these things, our review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-11-

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

As discussed, the prosecutor did not engage in misconduct. Trial counsel cannot be deemed ineffective for failing to raise a futile objection. *Id*. Defendant is not entitled to relief on this basis.

## V. EXPERT TESTIMONY

Defendant also maintains that the prosecution's expert witness, Holly Rosen, inappropriately bolstered M M-H's testimony and vouched for M M-H's credibility. Alternatively, defendant asserts that his trial counsel was ineffective by failing to object to the expert's testimony. We disagree.

Generally, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (cleaned up). "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Id*. at 252, citing MRE 103(a). At trial, defendant did not object to Rosen's testimony that he now challenges on appeal and thus the issue is unpreserved. Accordingly, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 752-753.

In sexual-assault cases, an expert witness may not (1) "testify that the sexual abuse occurred," (2) "vouch for the veracity of a victim," or (3) "testify whether the defendant is guilty." *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). But an expert may testify "in the prosecution's case in chief regarding typical and relevant symptoms . . . for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim[.]" *Id*. The *Peterson* Court added that "the prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of [persons] who are victims of sexual abuse." *Id*. at 373.

In this case, Rosen, a social worker, testified as an expert witness for the prosecution. Rosen had never met M M-H or defendant, and she was not provided any materials or reports regarding the matter. Rosen testified that victims of sexual assault often act in ways that do not make sense to the general public (i.e., nonintuitive behavior). For example, delay in reporting to authorities, not fighting back, not fleeing the area after the assault, not seeking an immediate forensic medical examination, and not displaying outward signs of trauma.

Defendant argues that, generally, Rosen's testimony was improper because it allowed the prosecutor to connect the behavior of typical sexual-assault victims with behavior displayed by M M-H. He contends that such bolstering was impermissible because he never pointed to any behavior by M M-H as reasons to not believe her. We disagree. "When the credibility of the particular victim is attacked by a defendant, . . . it is proper to allow an explanation by a qualified expert regarding the consistencies between the behavior of that victim and other victims of . . . sexual abuse." *Id*. at 375. This case was entirely dependent on the credibility of the witnesses. At trial, defendant attacked M M-H's credibility because she delayed reporting the incident, did not flee after the assault, continued to speak with defendant, did not obtain a forensic medical examination, and did not otherwise display signs of trauma.

Rosen did not state that she believed M M-H's allegations were truthful or comment on whether M M-H's trial testimony was truthful. Rosen's testimony made clear that she did not know any of the particulars of the allegations against defendant. And she acknowledged that it was not her role to determine whether someone was a victim. Further, Rosen did not testify that M M-H's behaviors were consistent with that of a sexual-assault victim. She simply described nonintuitive behaviors exhibited by sexual-assault victims. She also explained the long-term effects sexual-assault victims suffer. Rosen's testimony was based on her observations throughout her career and training. She explained that her testimony was "general information that is recognized by [her] profession based on [her] education, training, skills, and experience." Given that Rosen's testimony was limited to an explanation of the common nonintuitive behaviors seen in sexual-assault victims, it was not plain error to permit Rosen's testimony.

Defendant also challenges Rosen's response to trial counsel's questions regarding false reports of sexual assault and lying about consent. Defendant argues that Rosen improperly vouched for M M-H's credibility because Rosen testified that fabrication was inconsistent with her experience. We disagree. Rosen limited her opinion to her personal experience and agreed that her experience did not cover every scenario. In other words, it was certainly possible that a person could lie about being sexually assaulted. During cross-examination of M M-H, trial counsel exposed some inconsistencies in her version of events. The jury could have reasonably inferred that, because of the discrepancies, M M-H's disclosure was one of the instances that a person fabricated being a victim of sexual assault. But it also would have been reasonable for the jury to infer that M M-H's disclosure was not fabricated because her version of events was generally consistent. Both inferences could be reasonably drawn from the evidence. Rosen did not vouch for M M-H's credibility, and it was not plain error to allow her testimony.

Alternatively, defendant asserts that his trial counsel was ineffective for failing to object to Rosen's testimony. We disagree. As discussed, Rosen did not vouch for M M-H's credibility or improperly bolster her testimony. Trial counsel cannot be deemed ineffective for failing to raise a futile objection. *Head*, 323 Mich App at 539. Further, trial counsel's cross-examination of Rosen as to whether people falsely report sexual assault or lie about consent is presumed to have been a matter of trial strategy. See *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) ("Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]"). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (cleaned up). And this Court will not second-guess

matters of trial strategy. *Abcumby-Blair*, 335 Mich App at 237. Defendant is not entitled to relief on this issue.

## VI. FLIGHT INSTRUCTION

Defendant additionally argues that the trial court abused its discretion by giving a flight instruction. We disagree.

Generally, we review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But a trial court's determination whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

A party must object or request a given jury instruction to preserve the error for review." *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000), citing MCL 768.29. "A defendant waives an issue by expressly approving of the trial court's action. When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019) (citation omitted). Before closing arguments, defense counsel objected to the flight instruction proposed by the prosecution. But the parties agreed on modifications to the language of the proposed instruction. After the jury was instructed, defense counsel expressly approved the jury instructions as given. Accordingly, appellate review of this issue has been waived. *Id*. See also *Kowalski*, 489 Mich at 503 ("[B]ecause defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error.").

## VII. CONSECUTIVE SENTENCES

Finally, defendant contends that the trial court failed to provide any reasons for imposing consecutive sentences, and therefore the case must be remanded for the trial court to provide particularized reasons.[7] We disagree.

"When a statute grants a trial court discretion to impose a consecutive sentence, that decision is reviewed for an abuse of discretion." *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020). A trial court abuses its discretion by making a decision that is outside the range of reasonable and principled outcomes. *Id*.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (cleaned up). Defendant acknowledges that MCL 750.520b(3)[8] authorized the trial court to impose a consecutive sentence but argues that the trial court failed to give

---

[7] Defendant did not raise this issue at sentencing or in a motion for resentencing; but he moved to remand for resentencing, which this Court denied. *People v Bates*, unpublished order of the Court of Appeals entered March 4, 2025 (Docket No. 371525).

[8] Although MCL 750.520b(3) permits a trial court to impose a consecutive sentence, it does not require the imposition of a consecutive sentence.

particularized reasons for the imposition of a consecutive sentence. When imposing a consecutive sentence, the trial court must articulate its rationale in order to facilitate appellate review. *People v Norfleet*, 317 Mich App 649, 664-665; 897 NW2d 195 (2016). Because there is a "heavy presumption in favor of concurrent sentences," the trial court must clearly explain its reasons "for believing that the strong medicine of a consecutive sentence was appropriate" for the case at hand. *People v Norfleet (After Remand)*, 321 Mich App 68, 73; 908 NW2d 316 (2017).

At sentencing, the trial court elected to exercise its discretion to impose consecutive sentences, explaining:

> [W]hile Circuit Court rape trials have not been my normal docket, I have over the many years have been involved in many cases with terrible facts. They did not approach this case, the depredation of the Defendant which the jury found I think are, just not any good word [to] describe them. The amount of pressure that was put on the victim by all sorts of, all sorts of pressure, all sorts of angles, just caused her more pain, caused her more to feel manipulated. And the impact on the victim is manifest by the words written into the record or read into the record by the advocate and by the other two poems as well. It's visceral, it's ongoing . . . .
>
> I believe the testimony about the pressures that were put on the victim after the incident, they show, by whatever means necessary, can't let this go on. You can't let this prosecution go on. It's just a sign that the victim didn't matter and everything was about the Defendant, and it's consistent with his factual record.
>
> So the first thing I want to explain is the because of the nature of the crimes in the way the charges were brought consecutive sentencing was allowed. That means for the record, as I understand it, the Defendant has to serve the sentence for one count before the Defendant serves the sentence for the second count, and that's what I am going to do. This is, this case stands out in 35 to 40 years of doing this, these sorts of things, dealing with them as just, I don't have good words for it, but it's just horrible. It's just horrible what happened to the victim, and it's horrible the lack of any thought on her behalf that the Defendant has expressed ever.

The trial court clearly considered the offenses and the offender and articulated its reasons for imposing a consecutive sentence. The trial court's reasons were within the range of reasonable and principled outcomes under the circumstances of this case.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel